IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00879-RN

**Sherry L. Solis,**

                  Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of
Social Security,

                  Defendant.

**Memorandum & Order**

      Plaintiff Sherry L. Solis instituted this action on January 6, 2015, to challenge the denial of her application for social security income. Solis claims that Administrative Law Judge Richard E. Perlowski erred in evaluating the medical opinion evidence and in determining her residual functional capacity ("RFC"). Both Solis and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment in their favor. D.E. 34, 39.

      After reviewing the parties' arguments, the court has determined that ALJ Perlowski reached the appropriate decision. ALJ Perlowski properly evaluated the evidence, including the medical opinion of her treating physician, Dr. Warren Blackburn. Additionally, there is substantial evidence to support the RFC determination that Solis is capable of a reduced range of light work. Therefore, the court denies Solis's Motion for Judgment on the Pleadings, grants Colvin's Motion for Judgment on the Pleadings, and affirms the Commissioner's decision.

**I.      Background**

      On November 24, 2009, Solis filed applications for disability benefits and supplemental security income on the basis of a disability that allegedly began on August 15, 2006. After her

claims were denied at both the initial stage and upon reconsideration, Solis appeared before ALJ Richard E. Perlowski for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Perlowski determined that Solis was not entitled to benefits because she was not disabled. Following an affirmance by the Appeals Council, Solis filed a complaint in the district court. However, before a decision was issued, the court remanded for further consideration upon the Commissioner's motion. A subsequent hearing was held on December 12, 2013 after which ALJ Perlowski again determined that Solis was not disabled. Tr. at 1275–91.

In his decision, ALJ Perlowski found that Solis had the following severe impairments: degenerative disc disease, asthma, and chronic obstructive pulmonary disease ("COPD"). *Id.* at 1277. ALJ Perlowski also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 1280. ALJ Perlowski determined that Solis had the RFC to perform light work, except that she would be limited to performing postural activities only occasionally and she should avoid being exposed to excessive dust, fumes, gases, or similar pulmonary irritants as well as extreme heat. *Id.* He further found she should not work around dangerous, moving machinery and other significant hazards. *Id.* ALJ Perlowski concluded that Solis was unable to perform any past relevant work but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id.* at 1289–90. These jobs included: merchandise marker, sales attendant, and furniture rental consultant. *Id.* at 1290. Thus, ALJ Perlowski found that Solis was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Solis commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on January 6, 2015. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social-security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653–54 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, then, at step four, the claimant's RFC is assessed to determine whether the claimant can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to

3

step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

    **C.    Medical evidence**

Prior to her alleged onset date, Solis underwent surgery a percutaneous discectomy at L4-5 in June 2001. Tr. at 518. Providers performed a second percutaneous discectomy surgery at L3-4 in May 2002. *Id.* at 513. At a consultation for back pain in February 2004, treatment records reflect that neither surgery nor epidural steroid injections ("ESI") appeared to improve her pain. *Id.* at 505.

A January 2006 MRI of Solis's lumbar spine showed mild degenerative disc changes, a dorsal disc bulge at L3-4, and a dorsal and central disc bulge at L4-5. *Id.* at 625. Examination showed lumbar tenderness and normal gait. *Id.* at 1184. Solis received ESIs in January and February 2006, *id.* at 623, but reported that they brought her no relief, *id.* at 594. She complained of lumbar pain radiating into both legs and had lumbar tenderness. *Id.* at 920, 922. Dr. Blackburn diagnosed chronic back pain and prescribed narcotic pain medication. *Id.* at 922.

Solis was still experiencing low back pain in June 2006, and continued to take pain medication. *Id.* at 550–52. In October 2007, Solis reported constant and intense low back pain, which she sought relief from by soaking in hot baths. *Id.* at 580. The following month Solis reported that Percocet was not controlling her pain, so Dr. Blackburn switched her to morphine. *Id.* at 575. In December 2007, Dr. Blackburn remarked that Solis appeared chronically ill, she had positive straight leg raises, and the morphine was not working well. *Id.* at 881. As a result,

4

Dr. Blackburn switched Solis to OxyContin. *Id.* at 572, 881, 883. She returned to Dr. Blackburn in May 2008 in mild distress and he refilled her prescription for pain medication. *Id.* at 646.

Dr. Eunice Ngumba-Gatabaki performed a consultative psychological exam in May 2008. *Id.* at 647–50. Dr. Gatabaki opined that while Solis had the mental capacity for work, she may be unable to tolerate the stress and pressure associated with everyday work activities due to chronic pain and breathing problems. *Id.* at 650.

Solis also had a consultative physical examination at this time with Dr. Veerappan Sundar. *Id.* at 670–74. Solis reported to Dr. Sundar that she suffered from breathing problems and back pain. *Id.* at 671. Solis estimated she could walk 150 yards and sit and stand for 15–20 minutes. *Id.* Dr. Sundar summarized her condition as chronic back pain and COPD symptoms interfering with daily activities. *Id.* at 674.

Dr. Blackburn continued to refill Solis's prescription for pain medication throughout 2009. *Id.* at 1064–84. Solis returned to Dr. Blackburn's office in November 2009 with a cough and appearing "acutely ill." *Id.* at 724. On November 17, 2009, Dr. Blackburn issued a statement noting that he had treated Solis since 2005, that she had two back surgeries, and that she continued to have chronic back pain requiring narcotic medication. *Id.* at 732. He opined that she was permanently disabled from any work involving "lifting more than 10 pounds, repetitive bending, stooping or lifting of any weight and prolonged sitting." *Id.* In December 2009, Solis was treated in the Emergency Department for increased back pain. *Id.* at 735. She was diagnosed with an acute lumbosacral strain. *Id.* at 739.

Solis underwent a second physical consultative examination in February 2010 with Dr. M.A. Samia. *Id.* at 676–69. Dr. Samia reported expiratory wheezes and occasional rhonchi as well as discomfort tenderness to light palpitation in the lumbosacral region. *Id.* at 767–68. Dr.

5

Samia did not make a functional capacity assessment but deferred to Solis's treating physician to determine the degree of impairment and long-term prognosis. *Id.* at 769.

Solis also had a second consultative psychological examination that month with Dr. Ernest Akpaka. *Id.* at 758–60. She reported to Dr. Akpaka that she had constant pain and shortness of breath and had trouble walking and performing activities. *Id.* at 758. Dr. Akpaka diagnosed Solis with major depressive disorder and assigned a Global Assessment of Functioning ("GAF") score of 64. *Id.* at 760. Dr. Akpaka opined that Solis's ability to concentrate and tolerate work stress was significantly limited by her mood symptoms and that her medical conditions would likely place additional limitations on her ability to perform work activity. *Id.*

Solis returned to Dr. Blackburn in March 2010 complaining of back pain. *Id.* at 774. Dr. Blackburn continued to prescribe her narcotic pain medication for her back pain throughout 2010. *Id.* at 1018–22. In February 2011, Dr. Blackburn switched Solis from OxyContin, which made her nauseated, to morphine. *Id.* at 792, 795. In May 2011, Dr. Blackburn authored a second letter as to Solis's condition. *Id.* at 845. In it, Dr. Blackburn noted that he continued to treat Solis for her chronic back pain and COPD, that she had no improvement in the level of functioning, and that no further treatment options were available. *Id.* He reaffirmed his opinion that she was disabled. *Id.*

Solis saw Dr. Blackburn again in February 2012 after a fall down down some stairs aggravated her lower back pain. *Id.* at 838–41. Dr. Blackburn continued Solis on morphine for her chronic back pain in June 2010. *Id.* at 1453. He treated her in March 2013 for back pain, congestion and fatigue, *id.* at 1149–51, and in June 2013 he noted that Solis was getting relief from morphine but that it was making her nauseated, *id.* at 1447.

6

Solis also has a history of respiratory issues including persistent cough, congestion and shortness of breath. *Id.* at 446, 448, 453–56. An April 2005 Pulmonary Function Test ("PFT") indicated severely reduced forced vital capacity and severely reduced forced expiratory volume. *Id.* at 562. It was noted that Solis cooperated with fair effort. *Id.* at 556. Solis underwent additional PFTs in May 2008. *Id.* at 658–70. The interpretations of these tests were "severe obstruction" and noted that she gave good effort, that she was not easily fatigued or short of breath. *Id.* An additional PFT was conducted in February 2010. *Id.* at 763–69. It is unclear whether administrators found that her effort was good or weak, *id.* at 800, but the results were normal, *id.* at 763–66. Solis went to the Emergency Department in June 2012 complaining of shortness of breath. *Id.* at 820. Examination revealed clear lungs, no respiratory distress, and spontaneous, non-labored breathing. *Id.* at 820, 822.

### D. Medical opinion evidence and RFC

Solis first contends that ALJ Perlowski failed to properly evaluate the medical opinion of her treating physician, Dr. Blackburn. Solis asserts that Dr. Blackburn's finding that that she had serious impediments in daily activities and work activities should be credited. Solis asserts that ALJ Perlowski erred in finding that her pain was well-controlled. As a result of the alleged error in the consideration of this evidence, Solis argues that ALJ Perlowski improperly determined her RFC. The Commissioner maintains that ALJ Perlowski properly weighed the medical opinion evidence and properly determined the RFC. The undersigned concludes that there is no error in ALJ Perlowski's consideration of Dr. Blackburn's opinion or findings and that substantial evidence supports his RFC determination.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an

7

examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05–CV–46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96–6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject

8

medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love–Moore v. Colvin*, No. 7:12–CV–104–D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citing *Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11–CV–648–D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (unpublished) (citations & quotations omitted).

In his decision, ALJ Perlowski noted that Dr. Blackburn had treated Solis since 2005. Tr. at 1283. He further noted that Dr. Blackburn's treatment records for Solis reflected back pain despite two back surgeries. *Id.* Dr. Blackburn's records stated that narcotic pain relievers, steroid injections, and physical therapy had been required. *Id.* ALJ Perlowski also noted that in a Medical Source Statement dated November 17, 2009, Dr. Blackburn opined that Solis was permanently disabled from work which required lifting more than 10 pounds, repetitive bending or stooping, and prolonged sitting. *Id.* He further opined that Solis should avoid work around moving mechanical parts due to her pain medication. *Id.*

ALJ Perlowski considered Dr. Blackburn's opinion and gave it some weight, concluding that it was inconsistent with his own examinations. *Id.* at 1286–87. These treatment notes included references that Solis was in no acute distress, that she appeared well, and that she reported good pain control with medication. *Id.* at 1287.

9

Solis contends that Dr. Blackburn's treatment records demonstrate that her chronic pain was not controlled for any significant period of time. She maintains that Dr. Blackburn's findings are thus deserving of more weight as they are consistent with his records. In support of this argument, Solis points out that: Dr. Blackburn's treatment notes from December 2005 and January 2006[1] note that she continued to have significant lower back pain despite treatment, *id.* at 598–605; steroid injections provided her no relief, *id.* at 594; in October 2007, her pain was described as constant and intense, *id.* at 897; in November 2007, records note that Percocet was not helping with her pain, *id.* at 573–75; treatment records from December 2012 note that she was waking up with pain and that she appeared chronically ill, *id.* at 881; and she reported that she had to take hot baths and lie down to relieve her pain, *id.* at 1306–07.

Additionally, Solis submits that consultative examiners made similar findings. She argues that Dr. Sundar noted that both her back pain, which continued after her surgeries, and her COPD interfered with her ability to perform activities, that she appeared acutely ill, and that her back pain was not controlled by medications. *Id.* at 674, 724–25. Solis also points to March 2010 treatment records showing that she had increased back pain for which her Percocet was adjusted accordingly. *Id.* at 776, 856. She also maintains that she visited the Emergency Department in December 2009 for back pain. However, as the Commissioner notes, the ER records reflect that she sought such treatment in February 2005, well before the relevant period. *Id.* at 734–37.

The Commissioner argues that Solis is incorrect in asserting that all physicians of record concluded that she was seriously impaired in engaging in daily activities or that they deferred to Dr. Blackburn's assessment of her abilities. *See* D.E. 35 at 12. The Social Security Regulations require the Commissioner to consider all medical evidence and the opinions of medical sources,

---

[1] This is outside of the relevant time period.

which includes a duty to evaluate every medical opinion received. 20 C.F.R. § 404.1527(b), (c). The Commissioner is obligated to weigh all medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(l)–(5). Under 20 C.F.R. § 404.1527(a)(2), medical opinions are defined as as "statements from physicians and psychologists . . . that reflect judgments about the nature and severity of your impairment(s) including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Observing that many of the physicians made note of Dr. Blackburn's findings, the Commissioner asserts that several of the examining sources did not issue a "medical opinion" as contemplated in the Regulations. For example, Dr. Sundar summarized Solis's issues but offered no opinion for ALJ Perlowski to weigh; Dr. Samia deferred to Dr. Blackburn's observations without rendering a functional assessment for ALJ Perlowski to weigh; and Drs. Gatabaki and Akpaka issued opinions on Solis's mental limitations, which ALJ Perlwoski found were non-severe impairments. Accordingly, Solis's contention that every examining physician found she had serious limitations in performing basic activities or deferred to Dr. Blackburn's findings is incorrect.

The Commissioner further argues that the medical evidence of record supports ALJ Perlowski's determination that Solis's back pain and COPD were not as limiting as she asserted or as limiting as Dr. Blackburn concluded. For instance, the medical records noted: in October 2007 she had tenderness in her lumbar spine but negative straight leg raises, tr. at 900; imaging studies showed unremarkable or mild degenerative changes, *id.* at 652, 753, 822; Solis did not

11

follow up with Dr. Blackburn between June 2006 and October 2007, *id.* at 897, 1283; after she saw Dr. Blackburn in May 2008, she did not return to his office until November 2009, *id.* at 1283–84; and Solis saw Dr. Blackburn only a handful of times between 2010 and 2013 and treatment notes from this time indicate that she was doing well, she was in no acute distress, and her medications were adjusted, *id.* at 841, 849, 851.

Despite her present argument, the medical evidence demonstrates that Solis reported favorable results to her pain with medication: Dr. Blackburn's notes reflected that medications worked well, *id.* at 1283; in June 2006 Solis reported to Dr. Blackburn that the medication brought her good relief, *id.* at 1153; an October 2007 treatment note found that the medication did well, *id.* at 897; treatment notes subsequently reflected that Solis was doing well and functional, *id.* at 849–51, 1449; and in 2013, Solis reported that her back pain was usually well-controlled with the medication, *id.* at 1449. This evidence supports ALJ Perlowski's conclusion that her pain was not disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

The medical record further demonstrates that Solis sought care from Dr. Blackburn only eight times between 2008 and 2013, *id.* at 1282 and that she reported having severe pain when her pain medication ran out, *id.* at 877, 1153. Additionally, her course of treatment during the relevant time period was conservative. This supports ALJ Perlowski's finding that her impairments were not as serious as she alleged. With respect to her COPD, ALJ Perlowski pointed out that she had little reported or observed breathing difficulties during the relevant period and that she continued to smoke. *Id.* at 1284.

Solis does not identify additional evidence that ALJ Perlowski failed to consider. Rather, she picks parts of the medical record that bolster her position while ignoring other parts of the

medical record that are unfavorable to it. Her degenerative disc disease, COPD, and asthma, without related functional loss, are insufficient to establish a disability. *Gross v. Heckler*, 785 F.2d at 1166 (a diagnosis alone does not establish disability; rather, a plaintiff must also show a "related functional loss."). Solis has not shown other functional loss assessed, given that ALJ Perlowski did not fully adopt Dr. Blackburn's assessed limitations.

"In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (alteration in original) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks omitted). Solis has shown only disagreement, not error, with the consideration of the evidence. Because it is not within the province of the court to reweigh the evidence, the Commissioner is entitled to judgement in her favor on this issue.

Inasmuch as Solis has not demonstrated error in the consideration of the the medical opinion evidence, she is unable to establish that ALJ Perlowski improperly determined her RFC. As noted by ALJ Perlowski, all four State agency consultants opined that she was capable of a reduced range of light work. *Id.* at 1288. This constitutes substantial evidence supporting the RFC determination.

**III.     Conclusion**

For the forgoing reasons, the court denies Solis's Motion for Judgment on the Pleadings (D.E. 34), grants Colvin's Motion for Judgment on the Pleadings (D.E. 39), and affirms the Commissioner's final decision.

Dated: January 4, 2016.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE